## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILFREDO RIVERA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 3:14-cv-319 |
| | : | |
| v. | : | (Judge Mariani) |
| | : | |
| BART JOSEPHWICZ, et al., | : | |
| | : | |
| Defendants | : | Filed via Electronic |
| | : | |
| | : | (Jury Trial Demanded) |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.    PROCEDURAL HISTORY

On February 21, 2014, Mr. Rivera ("Plaintiff") filed his Complaint specifically naming Bart Josephwicz, Jerome Walsh, Captain Pall, and Gary Gordon as Defendants. (DKT. No. 1).   On September 16, 2016, the Court ordered all discovery to be completed by December 15, 2016 and dispositive motions to be filed on or before December 29, 2016. (DKT. No. 13).   The Defendants filed a Motion for Extension of Time to File Dispositive Motions. (DKT. No. 16).   The Court granted that Motion and issued an Order directing Defendants' dispositive motion to be filed on or before January 27, 2017. (DKT. No. 17).

### II.   STATEMENT OF ALLEGED FACTS

Plaintiff alleges that his cellmate, inmate Rodriquez, had an assaultive history. (DKT. No. 1, ¶ 1).   Rodriquez then supposedly repeatedly told Defendants Josefowicz, Gordon, and Walsh that he would continue assaulting inmates until he received a single cell. (DKT. No. 1, ¶ 2).  Although Plaintiff requested to be moved numerous times, no one moved him. (DKT. No. 1, ¶ 3).

On October 22, 2013, Rodriquez stabbed Plaintiff fourteen times while Plaintiff was sleeping. (DKT. No. 1, ¶ 3).  Per Plaintiff, he did not provoke the attack, and staff knew that Rodriquez would continue assaulting inmates. (DKT. No. 1, ¶ 3).  The Defendants knew of Rodriquez's mental condition and assaultive behavior. "[Plaintiff] spoke to all defendants personally requesting a move, [and was] either told to be patient, be careful, [and] no attempt was made to resolve my assault beforehand…" (DKT. No. 1, ¶ 3).

### III.   QUESTIONS PRESENTED

A.   Should Plaintiff's Failure-to-Protect claim be dismissed, if the Defendants had no warning or knowledge that Plaintiff would be assaulted by his cellmate?

Suggested Answer: Yes

B.   Did Plaintiff properly exhaust his administrative remedies pursuant to the Prison Litigation Reform Act prior to filing his Complaint?

Suggested Answer: No.

C.   Did Plaintiff sufficiently allege the personal involvement of Defendant Pall in this matter?

Suggested Answer: No.

### IV.   ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment is proper where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this evaluation, courts must determine if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and if the moving party is therefore entitled to judgment as a matter of law. *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The mere existence of some alleged factual dispute between the parties will

3

not defeat an otherwise properly supported motion for summary judgment; the requirement is that no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party. *Roth v. Norfalco*, 651 F.3d 367, 373 (3d Cir. 2011)(citing *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury might return a verdict in the nonmoving party's favor. *Liberty Lobby*, 477 U.S. at 256-57. Allegations made without evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

**B.** **Plaintiff's Failure-to-Protect claim should be dismissed, because the Defendants had no warning or knowledge that Plaintiff would be assaulted by his cellmate.**

The Eighth Amendment imposes a duty upon prison officials to protect inmates from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). But, not every governmental action affecting an inmate's well-being rises to the level of a constitutional violation. *Id. Whitley v. Albers*, 475 U.S. 312, 319 (1986). For example, mere negligence that leads to an inmate being harmed by another inmate does not expose a prison official to liability. *Reynolds v. Donate*,

4

2007 U.S. Dist. LEXIS 6419, at *10 (M.D. Pa. Jan. 30, 2007). Rather, the official

must have acted with "deliberate indifference to a substantial risk of serious harm to

a prisoner." *Farmer*, 511 U.S. at 836. The test for determining "deliberate

indifference" is subjective, meaning that it is not enough that the official should have

been aware:

> [A] prison official cannot be found liable under the Eighth Amendment
> ... unless the official knows of and disregards an excessive risk to
> inmate health or safety; the official must be aware of facts from which
> the inference could be drawn that a substantial risk of serious harm
> exists, and he must also draw the inference.

*Id.* at 837, 838-39; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001);

*Hamilton v. Leavy*, 117 F.3d 741, 746 (3d Cir. 1997); *see also, Day v. Fed. Bureau*

*of Prison*, 233 F. App'x 132, 134 (3d Cir. 2007) ("[D]eliberate indifference is more

than a mere lack of ordinary due care - it is a state of mind equivalent to a reckless

disregard of a known risk of harm.").

In most cases, threats between inmates will not "serve to impute actual

knowledge of a substantial risk of harm." *Jones v. Beard*, 145 F.App'x 743, 745 (3d

Cir. 2005). When an inmate seeks protection from other prisoners but an attack has

not yet occurred, the inmate must demonstrate a "pervasive risk of harm" to gain

such protection. *Day*, 233 F. App'x at 134; *Ostrander v. Horn*, 1435 F. Supp. 2d

614, 620 (M.D. Pa.2001). "A pervasive risk of harm may not ordinarily be shown

by pointing to a single incident or isolated incidents..." *Day*, 233 F. App's at 134

5

(holding that an inmate's conclusory allegations of being in "grave danger" were insufficient to demonstrate a "pervasive risk of harm").

Here, Plaintiff's failure-to-protect claims fail for multiple reasons. First, none of the Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. (SOF, ¶¶ 1, 2, 3). Prior to the assault, the Defendants were never informed that any other person ever threatened Plaintiff. (SOF, ¶ 3). Thus, the Defendants had no warning that Plaintiff would be assaulted by anyone, and therefore, no known risk of harm existed.

Second, the Defendants did not draw any inference that Plaintiff faced a substantial risk of serious harm from his cellmate, inmate Rodriguez. If Plaintiff had been threatened by his cellmate, both Plaintiff and his cellmate would have been placed in Administrative Custody. (SOF, ¶¶ 4, 8-12). But, that did not happen. (SOF, ¶¶ 9, 12, 12). In addition, if the Defendants knew that the cellmate posed a danger to any person, the cellmate would have been placed in Administrative Custody (SOF, ¶ 12). Again, that did not happen. (SOF, ¶ 13). Therefore, the evidence shows that the Defendants never inferred that Plaintiff was in any danger.

Third, Plaintiff failed to establish that his cellmate posed a pervasive risk of harm to Plaintiff. The only evidence offered by Plaintiff concerning this factor can be found in Plaintiff's Complaint. He wrote, "I noticed [Rodriguez] constantly tell Bart Josephwicz, Gary Gordon, Jerome Walsh he would continue assaulting inmates

6

until given a single cell…" (DKT. No.1, ¶ 2). But, courts have consistently held that threats and harassment that are purely verbal in nature do not violate the Eighth Amendment. *See e.g. Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *Johnson v. Glick*, 481 F.2d 1028, 1033 n. 7 (2d Cir. 1973); *Ramos v. Vaughn*, 1995 U.S. Dist. LEXIS 21644, at *12-13 (E.D. Pa. 1995). This is so because threats are common among inmates, thus menacing words cannot always present an excessive risk of harm, or cause prison officials to be aware of such a risk. *Jones*, 145 F.App'x at 745.

And here, the subsequent investigation into this incident revealed that Plaintiff had no idea that his cellmate posed any threat to him prior to the assault. Plaintiff had no problems with his cellmate except that approximately three days before the assault his cellmate told him that he had to get out of the cell.         (SOF, ¶ 17). But notably, even Plaintiff did not take this as a threat. (SOF, 18). And, Plaintiff never brought this situation to the attention of any staff member. (SOF, ¶ 19).

Given that Plaintiff did not feel threatened by his cellmate, that Plaintiff never disclosed to anyone that he felt threatened by his cellmate, that the Defendants did not know that the cellmate posed any threat to Plaintiff, and that Defendants never drew any inference that the cellmate posed any threat to Plaintiff, the Court should dismiss Plaintiff's Complaint.

**C.    Plaintiff did not properly exhaust his administrative remedies pursuant to the Prison Litigation Reform Act prior to filing his Complaint**

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust his administrative remedies prior to bringing a suit. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). Section 1997e(a) of the PLRA directs that: "[n]o action shall be brought with respect to prison conditions under section 1983…, or any other Federal law, by a prisoner…until such administrative remedies as are available are exhausted." The remedies must be exhausted properly. *Woodford*, 126 S. Ct. at 2387. Proper exhaustion demands compliance with an agency's rules. *See id.* at 2384. Consequently, Plaintiff must exhaust all available administrative remedies pertaining to every issue of his Complaint prior to seeking relief pursuant to 42 U.S.C. § 1983. *Porter v. Nussle*, 534 U.S. 516, 518 (2002).

In *Porter*, the Supreme Court held that the exhaustion requirement applies to all prisoner suits seeking redress for prison circumstances or occurrences. *Id.* at 520. It applies to all inmate suits about prison life whether they allege excessive force or some other wrong. *Id.* at 532. Further, although once within the discretion of the district court, exhaustion under § 1997e(a) is now mandatory. *Id.* at 518.

The United States Supreme Court and the Third Circuit Court of Appeals have reinforced the mandates of the PLRA by finding that it has a procedural default component. *See Woodford*, 126 S. Ct. at 2378; *Spruill v. Gillis*, 372 F.3d 218, 230

8

(3d Cir. 2004). All of the prison's procedures pertaining to grievances must be followed properly for the administrative remedies to be exhausted. *Woodford*, 126 S. Ct. at 2385. To determine if a prisoner has properly exhausted, courts should look to the prison's grievance procedures, because they supply the yardstick for measuring if a prisoner has properly exhausted. *See Spruill*, 372 F.3d at 231.

In this instance, the Grievance Policy provided Plaintiff with a three-step procedure for resolution of his grievances, namely, the initial grievance, the appeal to the Facility Manager, and the final appeal to the Secretary's Office of Grievances and Appeals ("SOIGA"). (SOF, ¶ 23). The Policy mandated, "The inmate will include a statement of the facts relevant to the claim .... The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance.... The inmate will also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law." (SOF, ¶ 23).

The Third Circuit Court of Appeals interpreted this language as requiring an inmate's grievance to include specific claims and to identify specific persons. *See Spruill*, 372 F.3d at 234. The court held that it is mandatory for the inmate to include the defendant's identity in his grievance where the identity is relevant to the claim. Correspondingly, the inmate must identify, if practicable, any defendant who may have information or who is someone with whom the inmate attempted to resolve the

9

matter informally. *See id.* at 234. The reason for this holding is to provide the prison officials with notice of the persons claimed to be guilty of wrongdoing. *Id.*

"[I]t is clear, regardless of the purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." *Hemingway v. Ellers,* 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing *Williams,* 146 F. App'x at 557). In the present case, Plaintiff's grievance did not provide prison officials with notice of the persons claimed to be guilty of wrongdoing or of the claims against them.

The only Grievance that Plaintiff filed to final review (grievance no. 480467) concerns the assault by his cellmate. In the Grievance, Plaintiff specifically wrote, "My grievance is my body and life was [sic] placed in imminent life threatening danger and the security of the institution was breached when I was placed in a cell with I/M R. Rodriguez (GF-2937) which constitutes a violation of several Amendments of the U.S. Constitution, *i.e.*, cruel & unusual punishment, equal protection, also official capacity dereliction of duty by U.M. B. Josefewicz. I'm also claiming there was [sic] intentional [d]eliberate indifference. It is well documented that I/M R. Rodriguez (GF-2937) is a very assaultive person." As relief, Plaintiff sought monetary damages for "official capacity negligence and dereliction of duty by U.M. B. Josefewicz..." (SOF, ¶ 27).

10

The Initial Review Response to this grievance by Defendant Gordon provides,

in part,

> While you claim staff should have known Rodriguez was a danger to you, this
> would require staff having the ability to predict the future. Many inmates have
> had difficulty with a former cellmate, but that doesn't mean they can never
> again cell successfully with another individual.  Inmate Rodriguez had no
> history of this type assault on a cellmate.  Staff at this facility certainly would
> not have knowingly placed you at risk with someone that had a lengthy history
> of unprovoked assaults on cellmates.

(SOF, ¶ 29).

The Initial Review Response also provided,

> I have reviewed an extensive Security Office Investigation report regarding
> this assault.  It is clear from your admissions to Security staff that you did not
> anticipate this assault...  While asked cell re-assignment, you never alerted
> staff to any fears you were feeling or that you were being threatened by
> Rodriguez.  It is unclear how you believe staff would be able to predict this
> assault, if you did not anticipate any violence...

(SOF, ¶ 30).

Plaintiff then completed the grievance process in its entirety for this

Grievance.  (SOF, ¶¶ 31 – 34).

Notably absent from the Grievance is an allegation that Plaintiff complained

to anyone, especially the Defendants, that Plaintiff was in any danger whatsoever.

Plaintiff does not allege, or even allude, that he informed the Defendants that he was

in danger.  Plaintiff does not write that the Defendants knew that he was in danger

and refused to act on that knowledge. And, Plaintiff does not allege that he or his cellmate asked to be celled elsewhere.

The only allegations specifically involving any of the Defendants are the two instances in which Plaintiff wrote, "also official capacity dereliction of duty by U.M. B. Josefewicz. I'm also claiming there was intentional [d]eliberate indifference. It is well documented that I/M R. Rodriguez (GF-2937) is a very assaultive person." As relief, Plaintiff sought monetary damages for "official capacity negligence and dereliction of duty by U.M. B. Josefowicz..." (SOF, ¶ 27). But, these bare accusations do not provide the requisite notice that any of the Defendants knew of and disregarded an excessive risk to Plaintiff. At best, this language indicates that Defendant Josefowicz should have known that the cellmate was assaultive, and thereby he acted negligently. Unfortunately, for Plaintiff, however, these allegations are insufficient to state a viable failure-to-protect claim. Therefore, the Court should dismiss Plaintiff's Complaint against all of the Defendants.

**D.      Plaintiff did not sufficiently allege the personal involvement of Defendant Pall.**

To state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v.*

12

*Stackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Relief cannot be granted against

a defendant in a civil rights action based solely on a theory of *respondeat superior*

or because the defendant was the supervisor or superior of the person whose conduct

actually deprived the plaintiff of one of his federally protected rights under color of

state law. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976);

*Goode v. Rizzo*, 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds, Rizzo v.*

*Goode*, 423 U.S. 362, 96 S.Ct. 598 (1976). Each named defendant must be shown,

via the complaint's allegations, to have been personally involved in the events or

occurrences that underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976). The

defendants must have acquiesced or have participated in the violation before liability

attaches under Section 1983. *Rizzo*, 423 U.S. at 377.

Courts have held that an allegation seeking to impose liability on a defendant

based on supervisory status, without more, will not subject the official to Section

1983 liability. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3rd Cir. 1998). A

mere "linkage in the prison chain of command" is not sufficient to demonstrate

personal involvement for purposes of Section 1983. *Ayers v. Coughlin*, 780 F.2d

205, 210 (2nd Cir. 1985)(per curiam). Permitting supervisory liability where a

defendant, after being informed of a violation through the filing of grievances,

reports, or appeals, failed to take action to remedy the alleged wrong is not enough

13

to show that the defendant has the necessary personal involvement. *Rizzo*, 423 U.S. 362 (1976).

Significantly, Plaintiff does not allege that Defendant Pall participated in or witnessed this incident or that he knew that it would occur. The lack of allegations against Defendant Pall is fatal to Plaintiff's claims against Defendant Pall. As the Court is aware, a defendant can only violate the Eighth Amendment in a failure-to-protect suit if he knew that an inmate faced a substantial risk of serious harm and consciously disregard that risk by failing to take reasonable measures to abate it.

Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Plaintiff's cursory allegations against Defendant Pall are not made with the requisite amount of particularity. *See also Whittington v. Vaughn*, 289 F. Supp. 2d 621, 628 (E.D. Pa 2003) ("The omission of a defendant's name from the material allegations of a complaint justifies dismissal of the Complaint against that defendant."). Therefore, the Court should find that Defendant Pall was not personally involved in the alleged facts of this Complaint and should summarily dismiss Defendant Pall from this matter.

## V.    **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court enter judgment in their favor and against the Plaintiff, and the Court is further requested to grant such other relief as may be necessary, just, and appropriate under the circumstances.

Respectfully submitted,

Office of General Counsel

By:   /s/ Timothy A. Holmes
Timothy A. Holmes
Assistant Counsel
Attorney I.D. No. 87758
Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA    17050
(717) 728-7763

Dated: January 26, 2017          Email:  tholmes@state.pa.us

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILFREDO RIVERA,                        :
                                        :
    Plaintiff,                          :          Civil Action No. 3:14-cv-319
                                        :
    v.                                  :          (Judge Mariani)
                                        :
BART JOSEPHWICZ, et al.,                :
                                        :
    Defendants                          :          Filed via Electronic
                                        :
                                        :          (Jury Trial Demanded)

### CERTIFICATE OF SERVICE

    I hereby certify that I am depositing in the U.S. mail a true and correct copy of the foregoing Brief in Support of Motion for Summary Judgment on the person(s) in the manner indicated below:

Service by first-class mail
addressed as follows:

Wilfredo Rivera, Jr. (BC 2009-2943)
Berks County Prison
1287 County Welfare Road
Leesport, PA   19533

/s/ Deborah J. Bryan
Deborah J. Bryan
Clerical Supervisor 2
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA   17050
(717) 728-7763

Dated:  January 26, 2017